CÓRDOVA *v.* THE BANCO ESPAÑOL DE PUERTO RICO.

APPEAL from the District Court of San Juan.

No. 14.—Decided June 5, 1905.

OBLIGATIONS—CONTRACT—FORM THEREOF.—Obligations arising from contracts have the force of law between the contracting parties and must be complied with in accordance with the terms of the same, no matter what the form in which they are executed may be.

ATTORNEY IN FACT—PRINCIPAL.—An attorney in fact who does not fail to comply with any specific instructions or any obligation expressly imposed by the power of attorney, and who, on the contrary, follows strictly the provisions thereof, cannot be held responsible for the acts of a principal, nor can he be charged with any fault, indemnification or delay by virtue thereof.

OBLIGATIONS—UNFORSEEN OR INEVITABLE OCCURRENCES.—In compliance with obligations and in the absence of a legal agreement or provision to the contrary, the parties are not liable for those occurrences which could not have been foreseen or which if foreseen were inevitable.

ID.—DELAY—INDEMNIFICATION—LEGAL INTEREST.—When an obligation consists in the payment of an amount of money and the debtor delays payment, indemnification therefor will consist in the payment of legal interest in the absence of an agreement to the contrary.

COSTS.—Costs must be taxed against the party whose demands are in all things denied.

### STATEMENT OF THE CASE.

This is a declaratory action for the recovery of a bond brought by Isabel Córdova y Stuart, widow of Primo Cos-

gaya y Villegas, a landowner and resident of Arecibo, represented in this Supreme Court by Attorney José E. Benedicto, as plaintiff, against the Banco de Puerto Rico, of this city, represented by Attorney Antonio Sarmiento, as defendant. The case is pending before us by virtue of an appeal taken by the plaintiff, Isabel Córdova, from the judgment rendered by a majority decision of the District Court of San Juan. This judgment and the dissenting opinion of one of the judges read as follows:

"*Judgment.*—In the city of San Juan, Porto Rico, November 30, 1903. A public and oral hearing was had of these declaratory proceedings instituted by Isabel Córdova Stuart, widow of Cosgaya, a landowner and resident of Arecibo, represented first by attorney Elpidio de los Santos y Laguardia, and then at the oral trial by Attorney José E. Benedicto, as plaintiff, against the Banco Español de Puerto Rico, having its domicile in San Juan, represented by Attorney Antonio Sarmiento, as defendant, for the recovery of a bond furnished by Primo Cosgaya y Villegas upon assuming the office as collector of taxes of Arecibo, legal interest on the amount of said bond, and costs.

"1. Isabel Córdova Stuart, widow of Primo Cosgaya y Villegas, formulated her complaint and attached thereto the order of the District Court of Arecibo of September 6, 1901, declaring her to be the intestate heir of her husband; the *Gazette* of this island of May 28, 1898, containing a circular of the Treasury Department directing tax collectors not to be too strict in the institution of compulsory proceedings; a statement of the delivery of the tax collections of the Banco Español of this city, showing the territorial tax list, amounting to 15,450.63 *pesos*, of which 11,476.75 *pesos* appear to have been paid into the local administration of Arecibo, with 3,973.88 *pesos* pending collection, according to the receipts attached to their stubs; the list relating to the tax on industry and commerce showing the sum of 924.63 *pesos*, of which 852.37 *pesos* was turned in in the form of receipts enumerated in the inventory above mentioned, the difference being covered by those in arrears in the third quarter and dropped in the fourth, sent to the Treasury Department and approved; a difference of 13.30 *pesos* is noted between the grand total of the tax statement and the receipts delivered, which difference remains in favor of the collector to cover the receipts of the first

and second quarters pending collection; these facts of the delivery are proved by the certificate of the corresponding debt which appears upon the books of the custom-house of Arecibo; communication No. 123 of said October 5th, which states that there is no discrepancy in the accounts of, nor balance against, Cosgaya, as the taxes under his charge for previous fiscal years had been settled; six letters addressed to Cosgaya by the governor and deputy governor of the bank and Admando de las Alas; a communication from Angel Sanz; a receipt issued to him by Antonio Morroceau; the resolution of the council of the bank of November 22, 1898, to the effect that until the superior Treasury authority had confirmed the statement of Angel Sanz, the bonds should not be returned; the reply to Isabel to the effect that her demand for the return of the bond should be addressed to the bank and not to the Treasury, which does not recognize any other entity than the bank in the settlement of its accounts with the Treasurer; and two receipts issued by Roses & Co. on August 9, 1895, of deliveries for the account of the Banco Español.

"2. The petition is based on the following facts: That she was declared the intestate heir of her husband, who had been appointed by the bank to be collector of taxes of Arecibo, and who had furnished bond in the sum of 1,072.41 *pesos,* in official money, in 1895; that on July 4, 1898, the deputy governor of the bank acknowledged to Cosgaya receipt of his letter of the first of said month and of the accounts of receipts from taxes for the same month, amounting to 468.44 *pesos,* which were credited to him, together with 13.20 *pesos* according to a receipt of Roses & Co.; that the collector complied with his duties with the approval of the bank, having in his favor a small balance as commission on collections; the bank accepted the resignation of Cosgaya from his office, designating a substitute in his place, according to a letter of August 16, 1898; the secretary of the bank certified to the fact that the repeated demands of the collector for the return of his bond had been considered, as he could not institute compulsory proceedings for collections according to the letter of Angel Sanz, on account of superior orders having been received, the bank opposing the return, for which reason the collector made his petition, presenting the documents and record of the collections as shown by the statement, which proves the fact of the delivery, and that there is no discrepancy in the accounts of or balance against Cosgaya, adding that the circular referred to appears in the *Gazette.* Upon Cosgaya addressing the Treasurer, the latter replied as set forth in the first finding of fact, that the amount of the bond

should be returned to him, plus legal interest for the delay, as he had nothing to do with the settlement between the bank and the Insular Treasury; that the law applicable to the case was to be found in sections 609, 658, 661, 1098, 1106, 1108, 1156 and 1847 of the Civil Code. She closes her petition with a prayer that it be held that Cosgaya had had no legal relation with the Government of the Island under a direct contract; that the Banco Español had entered into a contract with the Government for the collection of taxes; that in the capacity of a contractor the bank contracted with Cosgaya for his services; that he delivered to Roses & Co., and the latter turned over to the bank 1,128.85 Mexican *pesos,* equivalent to 1,072 *pesos,* official currency, at that time; that he made formal and legal delivery of his office as collector; that there has been delay in the return of the bond; that it should be returned to her with legal interest, and that the bank be adjudged to give and pay her within three days the 1,072.41 *pesos,* the official currency in 1895, or its present equivalent in American gold, with interest at 6 per cent per annum to the date of payment, with the costs.

"3. Notice of the complaint having been served upon the defendant, it made answer, praying for the dismissal of the complaint and that judgment be rendered in its favor, with costs against the plaintiff, and alleged the following facts: That the bank and the Administration entered into a contract for the collection of the direct taxes of the Island for a term of four years, which terminated on June 30, 1898, and which was extended for four years more. Article 8 of the conditions stipulated provided that the bank should appoint agents, with the approval of the Administration, to make the collections in its name, and in serious cases the bank, at the request of the administration, was to remove the persons appointed, the agents to be considered for all purposes of the law as State collectors and to have the character of agents of the public Administration. Article 12 of the conditions provided that the receipts delivered by the Treasury to the bank for collection and the sums collected for occasional charges and licenses should constitute a charge against the bank, and the amounts turned into the Treasury and the receipts whose return was accepted by the Administration on account of lapses and cancellations should constitute its credit. The accounts of collections were to be presented every natural quarter, within the quarter following that to which they pertained, and within the extension of six months the bank was to present an account of each budget, and after they had all been inspected by the proper offices and upon the

bank having settled all discrepancies, they were to be approved in due form, within the shortest period possible. Cosgaya was appointed collector in Arecibo in August, 1895, holding this office until August, 1898, when his resignation was accepted and he made delivery of the collections for 1897-1898, in the offices of the bank on October 10th, delivering, according to the memorandum of delivery, receipts pertaining to the territorial tax amounting to $3,973.88, and to the industrial and commercial tax for $852.37, which sums, together with that turned in and the amount of the lapses in the third quarter and cancellations in the fourth, not approved, balance the collections. The accounts of Cosgaya for the previous fiscal years were closed, as there were no discrepancies therein nor balance against him, but in 1897-1898 the receipts have been credited with the reservation of making such observations as might occur. The bank has attempted to secure a settlement and recently the Treasury presented a statement of discrepancies in which it reserves its decision, with respect to the receipts returned, and as the collector had not finished his term when he rendered his account, and as said account has not been approved, it is not possible to state whether any liabilities exist against him or not. The plaintiff does not present a certified copy of the record of the conciliation proceeding. The law applicable to the case is to be found in sections 1596 and 1718 of the Civil Code; section 63 of General Order No. 118 of 1899. The answer closed with the assertion that a bond being a secondary obligation it continued in force as long as the obligation or act it guaranteed subsisted.

"4. The case having been opened for the admission of evidence, there appear in that of the plaintiff, first: The demand upon the deputy governor of the Banco Español to produce the letters written by Collector Cosgaya between April, 1898, and October 10th, resulting in the presentation of certified copies of the letters of May 2d, July 12th and 20th, and October 10th, which stated that not a single receipt had been torn out since the declaration of war, and, furthermore, that as he belonged to the volunteers he had not a single moment to devote to collections, and not to be surprised at the small collections; that the statement referred to in the instructions had not been presented in any previous quarter, but if it is considered necessary that warnings of compulsory proceedings be presented that he be so informed; that as far back as July 1st he had asked to whom he was to deliver the stub receipts for occasional collections and licenses, and that no reply had been made; that on the

19th the local collecter sent him nineteen occasional orders and licenses, which he returned owing to his inability to continue the collections; that afterward he sent him two stub books which he has not opened, and inquires what he is to do with them as he had forwarded the statement of debtors sent to him, saying in his letter of October 10th that he had delivered the collections for 1897-1898 which had been in his charge, and that he expected his bond would be returned. A certified copy was submitted of a communication of July 1, 1898, stating that he forwarded a statement of the collection, as well as a receipt of the remission, and saying that his state of health did not permit him to continue holding the office; acknowledging the letters produced by the plaintiff signed by Antonio Sarmiento, secretary of the bank, and Carlos M. Soler, deputy governor of the same, the former stating as counsel for the defendant that the letters signed by José M. López and Armando de las Alas had not been denied, and that he acknowledged them to be genuine, said letters referring to the receipt of Roses & Co. of the amount of the bond; communicating to him on August 6, 1895, his appointment as collector of taxes of Arecibo; acknowledgment of the receipt of the accounts of the tax collections during the month which, according to a communication of July 1, 1898, amounted to $468.44; orders to hasten collections and further the purposes of the Treasury by instituting compulsory proceedings; informing him of the acceptance of his resignation on August 16, 1898, and appointing in his place Antonio Morroceau, and requesting the former to turn over the office to him under inventory and record; that he agree with the new collector as to the delivery, and make the delivery, offering to return to him the bond as soon as the record of the delivery should be received, which he would submit for the proper approval; that the delivery to the new collector is necessary in order not to delay the collection, as the latter had not received the documents on September 13, 1898, the letter of the 23d confirming that of September 13th; that the approval by the Treasurer of the accounts of each of the collectors, in order that the bank may be relieved of all liabilities, is awaited before returning the bond, which the bank cannot cancel until the Treasury shall approve the accounts of Arecibo, which have been submitted to it.

"5. The evidence submitted by the defendant shows that by an instrument executed before Notary Mauricio Guerra on July 2, 1898, between the Secretary of the Treasury and the Banco Español, the latter assumed charge of the collection of the territorial and in-

dustrial and commercial taxes of this Island for a period of four years, which expired on June 30, 1898, and was extended to the same date in 1902. Article 8 of this instrument provided that the bank should appoint agents or delegates to make the collections in its name in accordance with the provisions in force, the appointments to be approved by the Administration, and that, in grave cases, at the request of the State, the persons appointed were to be removed, and that they were to be considered the actual collectors and agents of the Administration. Article 19 provided that the offices of the Treasury were to inform the bank of the amounts collected by such agents, and that the approval of the additions, lapses and cancellations were to be communicated to it. Section 23 provided that accounts should be rendered every quarter, within the quarter following that to which they pertained; that they should be countersigned by the governor of the bank; that the accounts relating to towns should be presented within the six months' extension, the bank presenting to the administration the account covering each budget, and after their examination by the proper offices and after the settlement of discrepancies by the bank, they were to be approved.

"6. In addition to the evidence of the defendant, a certificate was attached issued by the Treasurer to the effect that of the amounts of the collection of State taxes which the Banco Español had in charge, the latter delivered to the Treasury receipts pending collection for the fiscal year 1897-1898 which had come from the office at Arecibo, amounting to $4,828.55; that on March 20, 1901, after an examination of the stub receipts for the fiscal year 1897-1898 and previous receipts delivered, the summary was forwarded to it, under the reservation of such observations as might become necessary, and that on June 12, 1902, there was forwarded an account of the taxes pending collection to said fiscal year, with a statement of the total amount thereof, without prejudice to the decision which might be reached; that the receipts for the collections in Arecibo had not been definitely credited to the bank nor had the accounts of said city with relation to the receipts pending payment been approved.

"7. The proceedings having been conducted in the manner prescribed by law, counsel for the parties made their respective arguments, and in due time judgment was rendered by a majority vote.

"Presiding Judge Juan Morera Martínez delivered the opinion of the court.

"1. The receipts for the collections in Arecibo not having been finally credited to the bank, nor the accounts of said city relating to

the receipts pending collection having been approved, it is not possible to grant the various prayers contained in the complaint, especially those with reference to the return of the bond with interest for the delay, because the obligations and liabilities of the collector have not been extinguished, nor can the bank enforce such obligation and liabilities until the net amount for which the collector is liable to it is known or until said bond is approved.

"2. A bond being a secondary obligation it continues in force as long as the obligation or act guaranteed thereby subsists.

"3. As the complaint should be dismissed for the reasons stated, the costs should be taxed against the party plaintiff.

"We adjudge that we should declare and do declare that the complaint referred to in these proceedings does not lie, and render judgment in favor of the Banco Español of Porto Rico, with the costs against Isabel Córdova Stuart, widow of Cosgaya.

"Thus, by this our judgment, finally rendered, do we pronounce, order and sign.—Juan Morera Martínez. With a dissenting opinion, Frank H. Richmond.—José Tous Soto."

DISSENTING OPINION OF MR. JUSTICE FRANK H. RICHMOND.

"The findings of fact are accepted.

"1. The contract of deposit, entered into between Primo Cosgaya and the bank, had nothing to do with the contract between the Treasury and the bank, as the collector placed his money on deposit as a guarantee of the faithful performance on his part of his duty of collecting taxes to the bank, returning either the money collected, or, according to the system then in force, the receipts not delivered to the taxpayers and paid by them, and the subsidiary bond contract terminated with the extinction and fulfillment of the principal contract between Cosgaya and the bank, by the delivery of his office to his successor, to the satisfaction of the bank, which made no objection or claim whatsoever.

"2. If any liability existed on account of a lack of promptness in collecting from delinquent taxpayers by compulsory process, the evidence shows that this was by order of his superior, which constitutes a perfect and legal excuse, as was also a perfect legal excuse for compliance therewith, the actual state of warfare in the country, if it did exist, with the consequent suspension of all civil operations.

"3. The bond deposited in cash by the collector can in no just or equitable sense be considered as a bond or guarantee to assure the

bank immunity on account of discrepancies found in or objections made to the account of its administration by the Treasury Department; and it is neither just nor equitable that the bank, because of its attitude of inaction or inertia in the settlement of its accounts with the Treasury, should retain in its possession money belonging to another under the pretext that the account is not settled.

"4. The eighth clause of the instrument entered into between the Secretary of the Treasury and the Banco Español, while it provided that the collectors were to be considered as actual collectors and agents of the administration, is not sufficient to subrogate the bank to the Treasury, and to substitute Cosgaya in place of the bank in the contracting situation of the parties, and had merely the effect of subjecting the agents appointed by the bank to the same criminal liability which, under the Penal Code, public collectors might incur through the embezzlement or diversion of the funds collected by them, and at the same time of vesting them with the powers and duties of public employees in the performance of their duties, although appointed on the initiative of a quasi-private institution.

"5. The law does not impose upon collectors the obligation of assuring and guaranteeing the collection of the receipts delivered to them, nor did the bank under its contract with the Treasury assume such responsibility, but as a matter of fact it simply undertook to advance a certain part of the taxes before collection, taking the receipts as security, assuming charge of the collection and receiving therefor a certain percentage as interest and commission in compensation for its fiscal services as a banker.

"6. Notwithstanding the fact that five years have elapsed since the rendition of the account, it has not been shown that the Treasury has made any objection to the account of taxes collected in Arecibo, but, on the contrary, has simply approved them, without prejudice to what might be discovered later, and as it appears clearly from the record of the delivery of October 10th that Cosgaya returned the list of collections of territorial taxes amounting to $15,450.63, that he had collected and turned into the local custom-house of Arecibo the sum of $11,476.75, as shown, returning also the receipts pending collection amounting to $3,973.88; and with respect to the industrial and commercial tax, that he had presented the list for $924.63, returning $852.37 in receipts, such difference of $52.26 being covered by the equivalent of the lapses of the third quarter and the cancellations of the fourth, forwarded to the Treasury Department and not approved, and that the accounts of previous fiscal years of his service

had been settled and finally approved; it being the duty of the bank to formulate and enforce any objections or claims existing, and in view of the expiration of five years, it is quite possible to assume with reference to the bank that in justice and equity there are no discrepancies or claims, and that any right of action which the bank might have to liquidate and recover any loss and damage caused in specific cases by reason of lack of zeal chargeable to the collector, has prescribed.

"7. A still further reason may be found in the fact that the act of the Legislative Assembly of 1903, for the condonation of all delinquent taxes, makes it improbable that any attempt will be made in the future to enforce any liability which a collector may have incurred through lack of zeal or diligence, reserving only, however, according to the spirit and a just and equitable construction of said law, liabilities arising from the diversion of funds collected and not accounted for.

"I decide that I should admit and do admit the complaint filed and should adjudge and do adjudge the Banco Español to pay to Isabel Córdova Stuart, widow of Cosgaya, the sum of 1,072.42 *pesos,* provincial money, or its equivalent of $637.42, American money, with interest at the rate of 6 per cent, from August 7, 1895, to the date of payment, and the costs of the proceedings.—Frank H. Richmond."

Notice of the foregoing judgment having been served on the said plaintiff, Isabel Córdova, she took an appeal therefrom, as the heir of her husband, Primo Cosgaya y Villegas, which was allowed, and upon the record being forwarded to this Supreme Court the parties presented briefs and made their oral arguments at the hearing for and against the decision appealed from, respectively.

*Mr. José E. Benedicto,* for appellant.

*Mr. Sarmiento,* for respondent.

Mr. JUSTICE FIGUERAS, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact of the judgment appealed from are accepted.

Among the letters exchanged between the Banco Español, now the Banco de Puerto Rico, and Primo Cosgaya are the following:

" 'San Juan, P. R., August 19, 1898. Mr. Primo Cosgaya, Arecibo. Dear Sir: The new collector of that town informs us under date of yesterday that it has been impossible to come to an agreement with you with respect to the delivery of books and documents, for the reason that you demand the simultaneous return of the bond furnished by you to answer for the office from which you have resigned. We regret very much that we cannot accommodate you, because the return must be preceded by the delivery, of which the proper committee of this bank will take cognizance, as it will also pass on the return of the bond. We understand that a misunderstanding only could have caused the delay in the delivery of that office. We appeal to your well known good judgment in order that upon becoming convinced hereof you will assist us to the last moment by delivering the books, documents, etc., in order that the new collector may enter upon his duties. Assuring you again and offering to reciprocate by the return of the bond as soon as the memorandum of the delivery shall reach our hands, and which we shall submit for the necessary approval, we remain yours, etc. (Signed) Armando de la Hera.'

" 'San Juan, P. R., September 23, 1898. Mr. Primo Cosgaya. Dear Sir: We confirm our letter to you of September 13th, and again request you to deliver everything relating to taxes to Mr. Morroceau, because the contract with the public Treasury having been rescinded, it is urgently necessary and of interest to all that the collection be hurried and former fiscal years be liquidated. As the collector of customs of that place is to take charge of everything pertaining to the current fiscal year, you might at once terminate that delivery to Mr. Cosgaya (1) and render an account of the result for the return of your bond. With regard to the compulsory proceedings, we have no doubt that they will be authorized by the collector of that place, facilitating your delivery to Mr. Cosgaya. (2) Your obedient servant, etc., Carlos María Soler, Deputy Governor. Rubricated.' "(1) (2) We believe that instead of Mr. Cosgaya it should be Mr. Morroceau, because it cannot be supposed that Cosgaya would deliver to himself what he had to deliver to Mr. Morroceau.''

1. The question presented in this litigation is whether the return of the bond furnished the Banco de Puerto Rico by Primo Cosgaya, as tax collector of Arecibo, appointed by said bank, is subordinate to the approval of its accounts by the Insular Treasury, or if, having rendered them to said

bank, the latter should at once return the said cash bond to his widow and heir, Isabel Córdova y Stuart, the plaintiff.

2. Obligations arising from contracts have the force of law between the contracting parties, and must be complied with in accordance with the terms thereof, whatever form they may be entered into, but it is necessary, in the event of judicial controversy, that each party prove, by the means recognized in law, the action and exceptions respectively alleged in the complaint and in the answer.

3. There is no specific and concrete evidence from which an exact knowledge can be obtained of each and every one of the obligations which the bank alleges the plaintiff assumed when he accepted the office of agent, but, on the contrary, the two letters inserted in the last finding of fact show that from the moment said collector first began to present his claims legal bonds existed only between the latter and the banking institution which appointed him, without absolutely anything being found to permit of a conclusion that the former engaged not to demand the return of his cash bond until his accounts should have been approved by the former General Intendancy of the Public Treasury, and now by the Insular Treasury.

4. An agent who does not fail to comply with any specific instructions or with an obligation expressly imposed by the agency, but, on the contrary, complies with the terms of the latter, as shown by the acts of the principal, cannot be held responsible for such acts, if, as a consequence, fault, indemnity and delinquency is incurred; and this being the case, it is neither just nor equivalent that, after nearly seven years of continuous demands, the cash bond should continue to guarantee the discharge of an office which terminated with the delivery, without objection, of the accounts of the discharge of such office.

5. It is not venturesome to suppose that the delay in the approval of the accounts of the collections in Arecibo by the

Insular Treasury is due to the change of sovereignty and the radical transformation in matters of taxation, but it does not appear that even formerly the collector and now his heir were obliged to request their previous approval, nor has she capacity therefor, and in any event she could never be held responsible for events which could not have been foreseen, or which, having been foreseen, were inevitable.

6. In this case the damages on account of the delay in the return of the amount deposited may be offset by the payment of legal interest.

7. The costs should be taxed against the party defendant.

In view of sections 1058, 1072, 1075, 1182 and 1183 of the Revised Civil Code, 333 of the Code of Civil Procedure, and the opinion of the Supreme Court of Spain of April 20, 1894, we adjudge that, reversing the judgment of the District Court of San Juan of November 30, 1903, we should adjudge and do adjudge the Banco de Puerto Rico to return to Isabel Córdova y Stuart, widow of Cosgaya, within five days, the equivalent in American gold of the sum of 1,072.42 *pesos,* provincial money, deposited as a bond in said bank by Primo Cosgaya, with legal interest from the date of the filing of this complaint, and we also adjudge the bank to pay the costs. It is ordered that a certified copy of this opinion be sent to the court of San Juan for the proper purposes.

Justices Hernández, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE QUIÑONES.

The undersigned justice regrets exceedingly that he is obliged to dissent from the respected opinion of his learned colleagues, and formulates a dissenting opinion as follows:

The findings of fact and conclusions of law of the judgment appealed from are accepted.

Although under the conditions established in the contract entered into between the Banco Español de Puerto Rico and

the General Intendancy of the Treasury on June 27, 1894, when the former assumed charge of the collection of the territorial and industrial and commercial tax in all the towns of the Island, the bank was authorized to appoint agents or delegates to effect the collections in its name and under its liability. The appointment of these agents was to be approved by the General Intendancy of the Treasury, which reserved the right to demand their removal under grave circumstances and when the interests of the State might require it, and after having been appointed and approved by the Intendancy, they were to be considered for all legal effects as the collectors then existing and as having the character of agents of the public Administration, and were to subject themselves in the performance of their duties to the legal provisions in force at that time, and to the special provisions concerning them contained in the schedule of conditions governing said contract.

As, according to the conditions of the contract, the accounts of collections to be rendered at the end of every quarter by the collectors, with the counter signature of the governor of the bank, were to be submitted for examination and verification to the respective local administrators and collectors, without prejudice to the general statement to be presented by said governor, within the six months' extension, to the General Intendancy of the Treasury of the accounts relating to each budget, in order that they might both be examined by the bureaus or offices to which presented, and after the settlement by the bank of any discrepancies found therein, approved in due form, within the shortest period possible, it is evident that the Treasury authorities are those who must finally decide as to the approval of these accounts, and consequently on the acceptance of the receipts which might be returned by the collectors on account of lapses and discontinuances in discharge of the liability of the bank. This is confirmed by the twelfth clause of the contract referred to, which

provides that the receipts delivered to the bank by the Treasury for collection, and the amounts which it might receive for occasional fees and licenses, shall constitute the charge against the bank, and the sums turned into the Treasury and the receipts whose return might be accepted by the Treasury on account of lapses and discontinuances shall constitute the credit in its favor; hence, until the approval of these accounts is obtained the liability of the bank to the Treasury cannot be considered to have ended, nor that of the collectors to the bank, because being agents of the latter, as they are, they must indemnify it for all loss and damage which it might suffer through the improper performance of their duties.

As the accounts of the tax collectors of Arecibo for the fiscal year 1897-98, of which Primo Cosgaya y Villegas had charge, have not as yet been approved, as shown by the certification issued by the Treasurer of Porto Rico, which appears at folio 101 of the record of these proceedings, the liability of Collector Cosgaya to the bank continues in force, and, therefore, the plaintiff, his widow and heir, has no right of action to demand of the former the return of the bond which he furnished it for the specific purpose of guaranteeing the liabilities which the Treasury might seek to enforce against it on account of the fault of the collector.

Although at the time of the delivery of the taxes collected in Arecibo, of which Primo Cosgaya y Villegas had charge, corresponding to the fiscal year 1897-98, no charge was made agaist the collector nor any discrepancy found, this does not imply that the bank had approved the account presented by the former, because apart from the fact that it was not the bank which had the power to approve it, the official having charge of its receipt set forth in the memorandum thereof its result only, without making any statements which were not within his province, in discharge of the liability of the collector.

Although when Primo Cosgaya accepted the agency con-

ferred on him by the Banco Español de Puerto Rico in plac-
ing him in charge of the collection of taxes in the district of
Arecibo, no document whatever was executed between him
and the bank setting forth the respective obligations and
rights of both parties, it is to be assumed, in view of the spe-
cial nature of this agency and the acts of the parties both
prior and subsequent to its establishment, that it was to be
carried out with the mutual understanding that the parties
were to submit to the conditions stipulated in the contract
entered into between the Intendancy and the bank, especially
when Primo Cosgaya having held the office of collector of
taxes previously, it is to be presumed that he was perfectly
aware of the manner and form in which the collections were
to be made and the liabilities which they entailed.

The bank being directly liable to the General Intendancy
of the Treasury for all the acts of Cosgaya in the collection
of the taxes, it is logical to deduce as a natural consequence
of the contract entered into between Cosgaya and the bank
that until the liability of the latter towards the Treasury is
not definitely settled, the liability of the collector towards the
bank must be considered to stand, in accordance with the pro-
visions of article 1258 of the former Civil Code, concordant
with section 1225 of the Code in force, according to which
"contracts are perfected by mere consent, and from that time
they are binding, not only with regard to the fulfillment of
what has been expressly stipulated, but also with regard to
all the consequences which, according to their character, are
in accordance with good faith, use and law."

The two letters transcribed in the judgment and addressed
on August 19 and September 23, 1898, to Primo Cosgaya by
Armando de la Hera and the deputy·governor of the bank,
Carlos María Soler, respectively, calling upon him to turn
over the collections to his successor appointed by the bank,
under the promise of returning him his bond, are not opposed
to these conclusions, inasmuch as this offer could not be con-

strued otherwise than in the sense that his bond would be returned to him, provided the delivery should not show any liability to the bank, but as this did not occur, as the memorandum of the delivery shows the return by the collector of receipts for the territorial tax and the commercial tax for more than 5,000 *pesos,* until the Treasury, which has the power to decide this matter, does not pass on the admission of these receipts, the liability of the bank towards the Treasury continues, and, consequently, that of the collector towards the bank continues also in force, and, therefore, the bond furnished by the former to the latter to answer for any loss or damage which the bank might suffer in connection with the collection of taxes which it placed in his charge also continues in force.

The costs should be taxed against the party whose claims are totally rejected.

In view of the legal provisions applicable to the case, and especially articles 661, 1091, 1709, 1718, 1886 and 1871 of the former Civil Code, reproduced by sections 669, 1058, 1611, 1620, 1767 and 1772 of the Code in force, we adjudge that we should affirm and do affirm the judgment appealed from, with the costs against the appellant.